FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2013 NOV 19 PM 2:31

CLERK'S OFFICE
AT BALTIMORE

BY____NM____DEPUTY



U.S. Department of Justice
United States Attorney
District of Maryland
Northern Division

| | |
|---|---|
| Rod J. Rosenstein<br>United States Attorney | 36 South Charles Street<br>Fourth Floor<br>Baltimore, Maryland 21201 |
| James G. Warwick<br>Assistant United States Attorney | |

DIRECT: 410-209-4860
MAIN: 410-209-4800
FAX: 410-962-3124
TTY/TDD: 410-962-4462
James.Warwick@usdoj.gov

October 25, 2013

Paul M. Sandler, Esquire
Matthew A.S. Esworthy, Esquire
Shapiro Sher Guinot & Sandler
36 South Charles Street
Baltimore, Maryland 21201

Richard Levitt, Esquire
Levitt & Kaizer
40 Fulton Street, 23rd Floor
New York, New York 10038

> Re:    United States v. Jerome Adolfo Castle, a/k/a Dontwon Burris
> Criminal No. GLR-13-0219 and GLR 13-0587

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). This plea is tendered pursuant to Rule 11(c)(1)(C). The agreed sentence is a term of imprisonment of fourteen (14) years on Count One of Indictment GLR-13-0219, and on Counts One and Two of Indictment GLR-13-0587. The sentences on these three counts are to run concurrently with one another. If the Defendant accepts this offer, please have him execute it in the spaces provided below. The terms of the agreement are as follows:

<u>Offense of Conviction</u>

1.    The Defendant agrees to plead guilty to Count One of Indictment GLR-13-0219, which charges him with Illegal Re-Entry of a Removed Alien, in violation of 8 U.S.C. § 1326, and to Counts One and Two of Indictment GLR-13-0587, which charges him with Conspiracy to Distribute and Possess with the Intent to Distribute Cocaine and Marijuana and with Conspiracy to Launder Money in violation of 21 U.S.C. § 846 and 18 U.S.C. § 1956(h). The Defendant admits that he is, in fact, guilty of said offenses and will so advise the Court.

## Elements of the Offense

2.     The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

**Indictment GLR-13-0219:**

a.     The defendant was previously deported from the United States after being convicted of an aggravated felony; and

b.     The defendant knowingly re-entered the United States without first obtaining the permission of the Attorney General of the United States or the Secretary for Homeland Security.

**Indictment GLR-13-0587:**

Count One:

a.     The defendant knowingly, unlawfully and intentionally became a member of a conspiracy with at least one other person;

b.     The purpose of the conspiracy was to possess and distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine; and

c.     At least one overt act was committed in furtherance of the conspiracy in the state of Maryland.

Count Two:

a.     The defendant knowingly, unlawfully and intentionally became a member of a conspiracy with at least one other person;

b.     The purpose of the conspiracy was to launder proceeds of criminally derived property through monetary transactions in and affecting interstate commerce;

c.     The monetary transactions involving criminally derived property had a value greater than $10,000.

## Penalties

3.     The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty is as follows: Count One of Indictment GLR-13-0219, which charges him with Illegal Re-Entry of a Removed Alien, twenty years, a fine of $250,000, followed by a term of supervised release of not more than three years; Counts One and Two of Indictment GLR-13-0587, which charges him with Conspiracy to Distribute and Possess with the Intent to Distribute Cocaine and Marijuana (Count One), life imprisonment, a $10,000,000 fine pursuant to 21U.S.C. § 841 (b)(1)(A), followed by a term of supervised release of not more than five years; and with Conspiracy to Launder Money (Count Two), twenty years, a fine of $250,000, followed by a term of supervised release of not more than three years . **A mandatory minimum sentence of ten years is applicable herein regarding Count One.** In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.     The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.     If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that he is not a citizen of the United States and will cooperate fully with all deportation procedures as outline in Paragraphs 13 through 16, infra.

<u>Advisory Sentencing Guidelines Apply</u>

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.    (a) This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond reasonable doubt, and to the following applicable sentencing guidelines factors:

Indictment GLR-13-0219

Defendant Jerome Adolfo Castle, age 35, is a citizen of Jamaica. In 2002, the defendant was convicted in the United States District for the Eastern District of Virginia of the crime of conspiracy to distribute marijuana, an aggravated felony. He was sentenced to 46 months in prison and subsequently deported to his native country of Jamaica in November of 2005.

On April 22, 2013, the defendant was found in Baltimore City, Maryland. At the time he was found in Baltimore City, the defendant had not obtained the permission of the Attorney General of the United States or the Secretary for Homeland Security to re-enter the United States.

Under U.S.S.G. 2L1.2, a base offense level of 8 applies to this case; however, a 16 level upward adjustment under Section 2L1.2 (b)(1)(A)(ii) applies because the defendant was convicted of a crime of violence for which he was sentenced to a term of imprisonment which exceeded 13 months. Thus, the adjusted base offense is 24.

Indictment GLR-13-0587:

From in or about March of 2013 through April 22, 2013, Jerome Adolfo Castle conspired with Josef Byrd, Harold Byrd, Maurice Jones and others to distribute and possess with the intent to distribute cocaine and marijuana. As a result of extensive surveillance and other investigative actions, investigators obtained federal search warrants for premises at 2923 Merrymans Mill Road, Phoenix, MD, the residence of Harold Byrd; 9010 Rock Ledge Court, Apartment 204, Owings Mills, MD, the residence of Josef Byrd; a commercial premises at 5819 Moravia Road, Baltimore, MD; and for 132 Archimedes Court, Pikesville, Maryland, the residence of Jerome Castle. Tracking through court-authorized GPS tracking devices and physical surveillance determined that Jerome Castle, Maurice Jones, Josef Byrd and Harold Byrd frequented all of the above-referenced locations in furtherance of the conspiracy to distribute cocaine and marijuana.

On April 22, 2013, investigators arrested Maurice Jones, Josef Byrd, and Harold Byrd as they took delivery of a shipment of approximately 500 pounds of marijuana at the commercial premises at 5819 Moravia Road. Jerome Castle was conducting counter-surveillance during the marijuana delivery and fled from police in a Ford pick-up truck. Castle took the police on a high-speed chase at speeds exceeding 100 miles per hour, and was arrested only after he crashed his vehicle into other vehicles parked in a used car lot in Harford County.

Investigators made entry to and searched 2923 Merrymans Mill Road, Phoenix, MD and recovered 5 kilograms of cocaine from the master bedroom area of the home. An

5

additional 250 grams of cocaine was found in a work-room inside the home. Approximately 1200 grams of marijuana were also recovered. Seventy-three black plastic Stanley containers were recovered. These containers are used to conceal 100 pound quantities of marijuana during shipment from Arizona to Maryland. The 5.25 kilograms of cocaine have a street wholesale value of approximately $150,000, and is a quantity intended for distribution and not for personal use. In addition to the narcotics referenced above, investigators recovered three handguns, one AK-47 (semi-automatic), and four sets of body armor from the residence.

Investigators also searched 9010 Rock Ledge Court, Apartment 204, Owings Mills, MD and recovered approximately 5.4 kilograms of cocaine from the garage area of the home. The 5.4 kilograms of cocaine have a street wholesale value of approximately $150,000, and is a quantity intended for distribution and not for personal use.

The residence of Jerome Castle at 132 Archimedes Court, Pikesville, MD was also searched. Investigators recovered almost $58,000 in currency; jewelry appraised at over $411,000; a money counter; a scale used to measure quantities of drugs; over 200 grams of marijuana; and seven handguns. The substances recovered during these searches were field-tested and the results were positive for the presence of cocaine and marijuana.

The drug activities of Jerome Castle were jointly undertaken with Harold Byrd, Joseph Byrd and Maurice Jones. The quantities of the cocaine and marijuana recovered clearly indicate that those drugs were intended for distribution and were not for personal use. The cocaine and marijuana was ultimately distributed by Castle and his co-conspirators to customers in the Baltimore area.

In addition to his drug activities, Jerome Castle conspired to conduct numerous monetary transactions on criminally derived property which had a value of more than $10,000. These monetary transactions were primarily bank account deposits made by Castle under the name of Dontwon Burris, and such banking transactions affected interstate commerce. Between 2010 and April of 2013, Jerome Castle deposited approximately $300,000 in cash to bank accounts in the name of Dontwon Burris. These deposits were made with proceeds from the sale of cocaine and marijuana, and are, therefore, criminally derived property.

In addition, on March 12, 2013, Castle caused Maurice Jones to engage in a monetary transaction at a Bank of America branch on Reisterstown Road, Baltimore, Maryland. Jones, using the alias of Charles Roberson, deposited $65,000 in currency to a bank account. This money was proceeds of drug sales.

The aforementioned conduct constitutes, under Count One, the crime of possession with the intent to distribute five kilograms or more of cocaine, a Schedule II narcotic controlled substance. Under Guideline Section 2D1.1(c)(4), a base offense level of 32 applies to this case in that more than five kilograms but less than fifteen kilograms of cocaine was the subject of the instant offense. An additional two level upward adjustment under Guideline Section 2D1.1(b)(1) for the possession of a dangerous weapon, specifically the firearms recovered from his residence. The total offense level is 34.

The base offense level for Count Two is eight (8) pursuant to Guideline Section 2S1.1(a)(2) In that the Defendant knew that the monies laundered were proceeds from the sale of narcotic drugs, a six (6) level increase in the offense level is required by Section 2S1.1(b)(1) In that the amounts laundered were more than $200,000 but less than $400,000, there is a further upward adjustment of twelve (12) levels. An additional two (2) level

increase under Section 2S1.1(b)(2)(B) is required in that the offense of conviction herein is for a violation of 18 U.S.C. § 1956. The total offense level is twenty-eight (28).

(b) The United States does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; (g) attempts to withdraw his plea of guilty; or fails to comply with the provisions of Paragraphs 9 through 12 as they relate to the forfeiture of properties acquired with proceeds of narcotics transactions.

(c) The Defendant, however, cannot be sentenced herein to less than ten (10) years for Count One of Indictment GLR-13-0587 given the mandatory minimum set forth in 21 U.S.C. Section 841 (b)(1)(A) unless a motion is made by the United States pursuant to Guidelines Section 5K1.1 and 18 U.S.C. Section 3553 (e). The Defendant is not 'safety valve' eligible under Guideline Section 5C1.2 and 18 U.S.C. 3553(f) because he has at least one prior felony conviction.

(d) The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a total sentence of fourteen (14) years imprisonment on all three counts of conviction, said sentences to run concurrently with each other, is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

7.      The Defendant understands that there is no agreement as to his criminal history or criminal history category.

8.      This Office and the Defendant agree that with respect to the calculation the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

Forfeiture

9. The Defendant agrees to forfeit to the United States all of his right, title, and interest in any and all money, property, or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including, but not limited to the following properties and assets:

a. All right, title and interest in the MEER Group and in all properties held by the MERR Group, including, but not limited to the following properties:

1. 4406 Findlay Road, Baltimore, MD 21206;
2. 825 Wildwood Parkway, Baltimore, MD 21229;
3. 3445 Harwell Avenue, Baltimore, MD 21213;
4. 5205 Craig Avenue, Baltimore, MD 21212;
5. 3031 Westfield Avenue, Baltimore, MD 21214;
6. 3102 Belmont Avenue, Baltimore, MD 21216;
7. 3337 Elmley Avenue, Baltimore, MD 21213;

b. Assorted jewelry valued at $411,111.00, more or less, seized from 132 Archimedes Court, Pikesville, Maryland, on April 22, 2013;

c. United States currency in the amount of $57,997.00, more or less, seized from 132 Archimedes Court, Pikesville, Maryland, on April 22, 2013, and $457.00 seized from Jerome Castle at the time of his arrest;

d. Men's Chrome Bracelet watch seized from 132 Archimedes Court, Pikesville, Maryland, on April 22, 2013;

e. Ninety-eight (98) pairs of assorted men's shoes seized from 132 Archimedes Court, Pikesville, Maryland, on April 22, 2013;

f. Two Sony Vaio laptop computers and one Apple I-Pad seized from 132 Archimedes Court, Pikesville, Maryland, on April 22, 2013;

g. Seven firearms and assorted ammunition seized from 132 Archimedes Court, Pikesville, Maryland, on April 22, 2013;

h. All right, title and interest of Jerome Adolfo Castle in the following vehicles:

1. 2011 Ford F-150 VIN# 1FTFW1ET3BKD42678;
2. 2009 Ford F-150 VIN# 1FTRW14849FB11219;
3. 2007 Ford F-150 VIN# 1FTPW145X7KB30262;
4. 2009 Jaguar XF Premium VIN# SAJWA06B49HR13943;

5. 2010 Dodge Caravan VIN# 2D4RN5D16AR434720;

6. 2008 Toyota Camry VIN# 4T1BK46K88U56624

10. The Defendant agrees to assist fully the United States in the forfeiture of the foregoing assets. The Defendant agrees to take all steps necessary to pass to the United States clear title to these assets, including but not limited to executing any and all documents necessary to transfer his interest in any of the above property to the United States, assisting in bringing any assets located outside the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that he will not assist a third party in asserting a claim to the foregoing assets in an ancillary proceeding.

11. The Defendant knowingly waives all constitutional, legal and equitable defenses to the forfeiture of the foregoing assets. It is further understood that, in the event that the United States files a civil action pursuant to [18 U.S.C. § 981/21 U.S.C. § 881] or any law enforcement agency initiates a forfeiture proceeding seeking to forfeit these assets, the Defendant will not file a claim with the Court or agency or otherwise contest such a forfeiture action and will not assist a third party in asserting any such claim. It is further understood that the Defendant will not file or assist anyone in filing a petition for remission or mitigation with the Department of Justice concerning the forfeited assets.

12. The Defendant agrees to identify all other assets and identify the sources of income used to obtain all other assets, including identifying all assets derived from or acquired as a result of, or used to facilitate the commission of, any crime charged in the Indictment. These properties include assets, including but not limited to, motor vehicles titled in names other than the Defendant's. The United States reserves the right to proceed against any remaining assets not identified in this agreement, including any property in which the Defendant has any interest or control. The Defendant understands that a failure to comply with the requirements of Paragraphs 9 through 12 may also constitute obstruction of justice, for which an enhanced sentence may be imposed by the Court. See United States v. Dufresne, ___F.3d ___, 2012 WL 5258785 (8th Cir. Oct. 25, 2012).

## Consent to Removal from the United States

13. The Defendant acknowledges that he is subject to removal from the United States and agrees not to contest any removal proceedings brought by the Department of Homeland Security (DHS). If the DHS files a Notice to Appear or other administrative document requiring the Defendant to show cause why he should not be removed, the Defendant agrees to request an expedited removal hearing and to consent to removal. The Defendant acknowledges that by consenting to removal, he will be removed from the United States expeditiously upon completion of his term of incarceration. The Defendant knowingly waives any and all rights to appeal, reopen, reconsider or otherwise challenge his removal.

14.    The Defendant agrees to waive any rights he may have to apply for any form of relief or protection from removal, deportation or exclusion under the Immigration and Nationality Act (as amended) and related federal regulations. The rights the Defendant is waiving include, but are not limited to the ability to apply for voluntary departure, asylum, withholding of deportation or removal, cancellation of removal, suspension of deportation, adjustment of status and protection under the Convention Against Torture. As part of this agreement, the Defendant specifically acknowledges and states that he has not been persecuted or tortured in, and has no present fear of persecution or torture in Jamaica on account of race, religion, nationality, political opinion or   membership in a particular social or political group.

15.    The Defendant agrees that upon entry of this plea agreement, the defendant abandons any and all applications for relief from deportation, removal or exclusion he may have filed and agreed not to file or prosecute any application for relief from removal, deportation or exclusion before any federal court, immigration court, Board of Immigration Appeals or DHS prior to the defendant's removal from the United States.

16.    The defendant agrees to assist the DHS in his removal.  Specifically, the defendant agrees to assist the DHS in procuring travel or other documents necessary for the Defendant's removal; to cooperate with representatives of the country or countries to which the Defendant's removal is directed; and to execute promptly those documents which are needed to effect the Defendant's removal.  The Defendant agrees that his failure or refusal to cooperate in his removal shall constitute a material breach of this agreement and may subject the Defendant to additional criminal penalties.

## Obligations of the United States Attorney's Office

17. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant and will recommend consistent with the terms of Paragraph 6(d), specifically a sentence of fourteen (14) years on all three counts of conviction, said sentences to be served concurrent with each other.

18.    The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Waiver of Appeal

19.    In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a)    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b)    The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed, including the right to appeal any issues that relate to the

10

establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release. Nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

20. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Entire Agreement

21. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

11

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____

James G. Warwick
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I also fully understand my obligations under the forfeiture provisions contained in this agreement. I am completely satisfied with the representation of my attorney.

_11-19-13_
Date

_____
Jerome Adolfo Castle

We are Mr. Castle's attorneys. We have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises us that he understands and accepts its terms. To our knowledge, his decision to enter into this agreement is an informed and voluntary one.

_11/19/13_
Date

_____
Paul M. Sandler, Esq.

_11/19/13_
Date

_____
Matthew A.S. Esworthy, Esq.

_____
Date

_____
Richard Levitt, Esq.